### NORTON v. WILSON.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—ARGUMENT.

 In an action for malicious prosecution and false arrest, in which the original complaint alleged that plaintiff was charged with larceny and arrested therefor, the complaint was amended at the close of plaintiff's case to allege that the charge was a violation of the hotel law in taking property from the hotel, upon which the landlord had a lien, but plaintiff's counsel, in his opening argument, emphasized at great length that plaintiff had been charged with larceny, saying, "Which means, in plain, common Anglo-Saxon, you are a thief," and made that idea dominant in his argument. *Held*, that the argument of counsel must have been prejudicial to defendant.

 [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

Appeal from Trial Term, New York County.

Action by Mabel Norton against Willard Wilson. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

Beno B. Cattell, of New York City (Arthur C. Palmer, of New York City, of counsel), for appellant.

Frank F. Davis, of New York City, for respondent.

CLARKE, J. The complaint alleged two causes of action, one for false arrest, which was dismissed upon the trial, and the other for malicious prosecution. It sets up that the plaintiff was by profession an actress; that on the 19th of October, 1909, the defendant mali-

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ciously, and with the intent to injure the plaintiff in her good reputation, appeared before a police magistrate and without any probable cause whatsoever charged the plaintiff, before said magistrate, with having committed the crime of grand larceny, and with having stolen certain personal property of the value of $500, and maliciously and without probable cause procured said magistrate to grant a warrant for the arrest of plaintiff upon said charge; that she was arrested at her home in the evening, taken to a police station house, and there imprisoned until the morning of October 20th, thereafter taken to the magistrate's court, and having been examined before said magistrate for the supposed crime, and the said magistrate, having examined the defendant herein and his witnesses, adjudged the plaintiff not guilty, and fully discharged and acquitted her of the same; that the said charge of grand larceny and the arrest of plaintiff thereunder were extensively published in several public newspapers, as the plaintiff believes, through the procurement of the defendant; that by means of the premises the plaintiff was injured in her person and prevented from attending to her profession, business, and household duties, and was compelled to pay the sum of $250 costs and counsel fees in defending herself, and in consequence of her arrest and detention she has been unable to procure a professional engagement such as she has heretofore had by reason of her standing in the profession; and that many persons, hearing of her arrest, and supposing the plaintiff to be a criminal, have refused to employ her, to her damage in the sum of $25,000.

The plaintiff was the wife of Edgar Norton, an actor, and with him and their son had occupied an apartment of three rooms and bath in the Hotel Remington, of which the defendant was the proprietor, for some three years and a half. At the time of the occurrences complained of, they were in debt for their board and accommodations. The defendant testified:

"As far as I can remember, the account had been an open one for about a year and a half before the Nortons went away. I had several conversations about the account with the plaintiff. I asked Mrs. Norton whether she could get the money on different times. She assured me that if Mr. Norton could not pay the bill she would pay me, even if she had to dispose of some of her property or mortgage some of her property. She would never see us defrauded. She said she had property. On the strength of that we continued giving her accommodations, and the family. * * * The latter part of September I asked Mrs. Norton again if she would get me the amount of the bill, which was getting up to be $554, and she told me that Norton could pay this bill if he wanted to; that he was earning $125 a week, and wanted me to send right away and demand it, and suggested that I send a telegram, which I did, as you can see."

This telegram was sent to Edgar Norton at Chicago:

"You must pay me $50 every week or pay in full and vacate."

No answer was received, and no amount has ever been paid on said account. He further testified:

"I asked her to pay the bill, to pay what she owed, to pay what she could on the bill. She said she would pay me if Mr. Norton did not, and she herself would be responsible."

The defendant had previously had a litigation in attempting to enforce the innkeeper's lien, in which he had been successful on appeal. Lurch v. Wilson, 62 Misc. Rep. 259, 114 N. Y. Supp 789. The fact of this litigation and the claim of the defendant that, as an innkeeper, he had a lien upon property in the possession of the guests of his hotel were called to the attention of the plaintiff, and she had had conversations in regard thereto. She had gone to her attorney and consulted with him in regard to her rights, and had been advised that she could take out of the hotel her own personal property. The defendant had been away for some weeks in the summer and early fall of 1909, and when he returned he. was informed by various members of his family and his clerks that the plaintiff had been engaged in stripping her apartment of everything except the furniture. On October 6th the plaintiff was stopped as she was carrying out of the hotel a large bundle, and on the 7th she and her son left, leaving the bill entirely unpaid. Subsequently another guest reported to the defendant that Mrs. Norton had left with her a large bundle containing things from the apartment.

The defendant consulted his attorney, laying the facts before him, who told him that it was a misdemeanor, but advised him to go before a magistrate and lay the matters before him. The misdemeanor referred to is that provided for by section 925 of the Penal Law (Consol. Laws 1909, c. 40), entitled "Frauds on hotel keepers":

"A person who obtains any lodging, food or accommodation at a hotel, inn, boarding house or lodging house, except an emigrant lodging house, without paying therefor, with intent to defraud the proprietor thereof or his agent or servant, or who obtains credit at such hotel, inn, boarding house or lodging house by the use of any false pretense, or who, after obtaining credit or accommodation at such hotel, inn, boarding house or lodging house, causes to be removed from such hotel, inn, boarding house or lodging house his baggage without the permission or consent of the proprietor, manager or authorized employé thereof before paying for his lodging, food or accommodation, and with the intention of not paying therefor, is guilty of a misdemeanor."

The defendant went before a city magistrate, laid the facts before him, who looked up the provision of law himself, and sent to his clerk and asked him to look it up, and both said that there was a cause for a warrant. An affidavit was drawn up, which the defendant signed, and the warrant was issued, upon which the plaintiff was arrested. She was arraigned before another magistrate, and after the witnesses had been heard, and the plaintiff had said that she had taken the advice of an attorney, the magistrate adjourned the further hearing until the afternoon and sent for that attorney, and upon his testifying that he had given the plaintiff the advice that she could take her own personal belongings from the hotel the magistrate discharged her.

After these papers had been admitted in evidence, and at the close of the plaintiff's case, the plaintiff was permitted, over objection and exception, to amend the complaint, stating that the offense with which the plaintiff was charged, instead of being larceny, was a violation of the hotel law. Plaintiff's counsel, however, in his opening, had expatiated at great length upon the fact that the plaintiff had been charged with the crime of larceny, saying, "Which means, in plain, common

Anglo-Saxon, you are a thief," had woven it into much of his examination, and had permeated the case with it, as is evidenced by frequent questions and statements by jurors. There can be no doubt as to the prejudice thereby created.

Plaintiff was permitted to give evidence herself and to call witnesses to establish a number of physical ills as a result of this arrest and detention overnight, which evidence was inadmissible under the pleadings, and the troubles testified to were not the proximate result of the defendant's act. These matters evidently affected the jury and account for the verdict. There were other errors, which may not occur upon a new trial.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.